13-1183-cv
*Adams v. Festival Fun Parks, LLC*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 21st day of March, two thousand fourteen.

PRESENT:    BARRINGTON D. PARKER,
            DEBRA ANN LIVINGSTON,
            SUSAN L. CARNEY,
                        *Circuit Judges*.

───────────────────────

ANDREW ADAMS,

                        *Plaintiff-Appellant*,

   -v-                                                    No. 13-1183-cv

FESTIVAL FUN PARKS, LLC, DBA LAKE COMPOUNCE THEME PARK,

                        *Defendant-Appellee*.

───────────────────────

                        JAMES V. SABATINI (Megan L. Piltz, *on the brief*), Sabatini & Associates, LLC, Newington, CT, *for Plaintiff-Appellant*.

                        RISA B. BOERNER (James P. McLaughlin, *on the brief*), Fisher & Phillips LLP, King of Prussia, PA, *for Defendant-Appellee*.

1

GAIL S. COLEMAN (P. David Lopez, General Counsel; Lorraine C. Davis, Acting Associate General Counsel; Carolyn L. Wheeler, Assistant General Counsel, *on the brief*), *for amicus curiae* U.S. Equal Employment Opportunity Commission, Washington, D.C., *in support of Plaintiff-Appellant*.

Brian East, Disability Rights Texas, Austin, TX; Rebecca Hamburg Cappy, National Employment Lawyers Association, San Francisco, CA, *for amici curiae* National Employment Lawyers Association, The Arc of the United States, The National Disability Rights Network, The Office of Protection and Advocacy for Persons with Disabilities, and Disability Rights Vermont, *in support of Plaintiff-Appellant*.

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Plaintiff-Appellant Andrew Adams appeals from a judgment of the United States District Court for the District of Connecticut (Hall, *C.J.*), entered March 12, 2013. The district court granted summary judgment for Defendant-Appellee Festival Fun Parks, LLC, DBA Lake Compounce Theme Park ("Festival"), on Adams's disability discrimination, gender discrimination, and retaliation claims, brought under the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("ADA"), Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), and the Connecticut Fair Employment Practices Act, Conn. Gen. Stat. § 46a-60 *et seq.* ("CFEPA"). We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

"We review *de novo* a district court's grant or denial of summary judgment, viewing the record in the light most favorable to the party against whom summary judgment is sought." *Mullins v. City of New York*, 653 F.3d 104, 113 (2d Cir. 2011) (internal quotation marks omitted). Summary

judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact "exists for summary judgment purposes where the evidence, viewed in the light most favorable to the nonmoving party, is such that a reasonable jury could decide in that party's favor." *Guilbert v. Gardner*, 480 F.3d 140, 145 (2d Cir. 2007).

## I. Disability Claims Under the ADA and CFEPA

The district court ruled that Adams failed to establish a *prima facie* case of disability discrimination under the ADA and CFEPA. On appeal, Adams and his *amici* urge us to vacate the district court's holding, arguing that the court below did not take into account the 2008 amendments to the ADA. *See* ADA Amendments Act of 2008, Pub. L. No. 110-325, 122 Stat. 3553 (codified at 42 U.S.C. § 12101 *et seq.*). While we are skeptical that the district court applied the correct standard in assessing whether Adams was disabled, we can "affirm summary judgment on any ground supported by the record, even if it is not one on which the district court relied," *McElwee v. Cnty. of Orange*, 700 F.3d 635, 640 (2d Cir. 2012), and accordingly we do not reach the issue of whether Adams has shown that he is disabled for purposes of the statute.

To establish a claim under the ADA, the plaintiff must show that: "(1) his employer is subject to the ADA; (2) he was disabled within the meaning of the ADA; (3) he was otherwise qualified to perform the essential functions of his job, with or without reasonable accommodation; and (4) he suffered adverse employment action because of his disability." *McMillan v. City of New York*, 711 F.3d 120, 125 (2d Cir. 2013) (quoting *Sista v. CDC Ixis N. Am., Inc.*, 445 F.3d 161, 169

3

(2d Cir. 2006)).[1]  Disability claims under the CFEPA are analyzed using a similar framework.  *See Curry v. Allan S. Goodman, Inc.*, 944 A.2d 925, 939-40 (Conn. 2008) (stating that Connecticut courts "review federal precedent concerning employment discrimination for guidance in enforcing our own antidiscrimination statutes," including disability discrimination under the CFEPA).   The *McDonnell-Douglas* burden-shifting framework applies to disability discrimination claims.  *See McMillan*, 711 F.3d at 125.  We focus on the fourth prong and hold that Adams's claim fails because he has not shown that there is a genuine issue of fact regarding whether he was subject to an adverse action by his employer due to his claimed disability.

An adverse employment action is a "materially adverse change in the terms and conditions of employment," which can include "termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, [or] significantly diminished material responsibilities," among other possibilities.  *Sanders v. N.Y.C. Human Res. Admin.*, 361 F.3d 749, 755 (2d Cir. 2004) (internal quotation marks omitted).  A plaintiff can also meet this prong if he was constructively discharged – that is, if he can show that, "rather than discharging [the employee] directly, [the employer] intentionally create[d] a work atmosphere so intolerable that [the employee] is forced to quit involuntarily."  *Petrosino v. Bell Atl.*, 385 F.3d 210, 229 (2d Cir. 2004) (internal quotation marks omitted).  "Working conditions are intolerable if they are so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign."  *Serricchio v. Wachovia Sec. LLC*, 658 F.3d 169, 185 (2d Cir. 2011).

---

[1]  An employer "may also violate the ADA by failing to provide a reasonable accommodation."  *McMillan*, 711 F.3d at 125.  Adams has made no claim based on a failure to accommodate.

4

First, the evidence brought forth at summary judgment does not show that Adams was terminated by Festival. In his deposition, Adams said that he was not told that he was being terminated, nor did he believe that he was fired. Moments later, following a break in the deposition, Adams said that he thought he was terminated because he "felt like [he] was being forced out of there." But he went on to concede that he "[r]esigned, because [he] couldn't deal with . . . being picked on." Adams also submitted an affidavit for purposes of summary judgment stating that he never gave a verbal or written resignation and had merely told a supervisor that he was "thinking about leaving the company." However, a party cannot defeat summary judgment "simply by submitting an affidavit that contradicts the party's previous sworn testimony." *In re Fosamax Prods. Liability Litig.*, 707 F.3d 189, 193 (2d Cir. 2013). Thus, we cannot credit Adams's later statement in the affidavit that he did not resign. Rather, we consider this evidence under the framework of constructive discharge because, at most, Adams said that he felt "forced" to resign due to the negative atmosphere in the maintenance shop.

Next, we conclude that Adams does not meet the high standard to establish that he was constructively discharged. Such a claim requires the employee to show both (1) that there is evidence of the employer's intent to create an "intolerable" environment that forces the employee to resign, and (2) that the evidence shows that a reasonable person would have found the work conditions so intolerable that he "would have felt compelled to resign." *Petrosino*, 385 F.3d at 229-30. We reach only the first of these two elements.

Our case law "indicates that something beyond mere negligence or ineffectiveness is required" to constitute "deliberate action on the part of the employer" sufficient to support a claim of constructive discharge. *Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 74 (2d Cir.

5

2000) (citing cases). Adams informed his supervisors about harassment by his coworker, Justin Walters, but also testified that his complaints led one of his supervisors to speak with Walters and that some types of harassment ceased as a result. Given this, Adams has not adduced sufficient evidence to create a material question of fact regarding whether Festival *deliberately* created the negative work atmosphere of which Adams complains. Rather, Adams's testimony is evidence, at most, of "ineffective or even incompetent . . . handling of the matter," which "does not rise to the level of deliberate action required by our precedent." *Whidbee*, 223 F.3d at 74. Thus, we conclude that Festival's conduct did not show an intent to force Adams to resign through the creation of intolerable working conditions.

Last, Festival's refusal to transfer Adams to another department cannot revive his claim. Even if the denial of transfer were itself an adverse employment action under the facts of this case,[2] Adams has not produced sufficient evidence that the denial was motivated by discriminatory motives. Rather, the undisputed evidence at summary judgment indicated that the refusal was for the legitimate, non-discriminatory reason that there were no full-time positions available in the park's paint shop. *See Kolenovic v. ABM Indus. Inc.*, 361 F. App'x 246, 249 (2d Cir. 2010) (summary order) (concluding that a lack of open positions can be a sufficient non-discriminatory reason for a denial of a transfer). Gerard Brick, the park's general manager, stated in a sworn

---

[2] We do not decide the issue, but to show an adverse employment action "by being denied a request for a transfer," a plaintiff "must establish that [the employer's] denial of her request for a transfer created a materially significant disadvantage in her working conditions." *Williams v. R.H. Donnelley, Corp.*, 368 F.3d 123, 128 (2d Cir. 2004) (emphasis omitted); *see also Beyer v. Cnty. of Nassau*, 524 F.3d 160, 164 (2d Cir. 2008) ("A denial of a transfer may . . . constitute an adverse employment action, but we require a plaintiff to proffer objective indicia of material disadvantage; subjective, personal disappointment is not enough." (internal quotation marks and brackets omitted)).

declaration that there were "no open positions in the paint shop" at the time of Adams's resignation, and that there had been no openings after Adams left the park. Adams's deposition testimony also does not create a question of fact on this point: he states only that the paint shop may have taken on workers from the maintenance shop for a few days per week, while he had requested that management transfer him to a full-time position in the paint shop. We thus conclude that Adams has not adduced sufficient evidence to create a material question of fact as to whether the denial of a transfer was discriminatory.

Because Adams has not shown that he was subject to an adverse employment action due to his disability, his ADA and CFEPA disability claims cannot succeed as a matter of law. Thus, albeit on narrower grounds, we affirm the district court's grant of summary judgment on these claims.

## II. Gender Discrimination Under Title VII and the CFEPA

Adams's federal and state gender discrimination claims pursuant to the third and fourth claims of the complaint – which do not allege a hostile work environment – fail for similar reasons.[3] Among other requirements to establish gender discrimination, a plaintiff must demonstrate that "he suffered an adverse employment action." *Sassaman v. Gamache*, 566 F.3d 307, 312 (2d Cir. 2009). Because Adams has not raised a material issue of fact as to whether he suffered an adverse employment action, the district court properly granted summary judgment on his non-hostile work environment claims of gender discrimination.

---

[3] Adams brought separately numbered hostile work environment claims, which we analyze below.

Adams also brought separate claims under Title VII and the CFEPA for sexual harassment creating a hostile work environment.[4] These claims require a plaintiff to show that "the complained of conduct: (1) is objectively severe or pervasive – that is, creates an environment that a reasonable person would find hostile or abusive; (2) creates an environment that the plaintiff subjectively perceives as hostile or abusive; and (3) creates such an environment because of the plaintiff's sex." *Patane v. Clark*, 508 F.3d 106, 113 (2d Cir. 2007) (per curiam) (internal quotation marks and ellipsis omitted). Additionally, there must be "a specific basis for imputing the conduct creating the hostile work environment to the employer." *Summa v. Hofstra Univ.*, 708 F.3d 115, 124 (2d Cir. 2013).

An employer violates Title VII's sex discrimination provisions "when it allows the working environment to become 'permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 74 (2d Cir. 2001) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). But Title VII does not create "a general civility code for the American workplace," *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998), and "simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment," *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (internal quotation marks and citation omitted). "The incidents of allegedly offensive conduct must also be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive." *Holtz*, 258 F.3d at 75

---

[4] Several of our sister circuits have recognized a hostile work environment claim under the ADA. *See, e.g.*, *Lanman v. Johnson Cnty.*, 393 F.3d 1151, 1155 (10th Cir. 2004); *Shaver v. Indep. Stave Co.*, 350 F.3d 716, 719-20 (8th Cir. 2003). We have not yet had occasion to consider this cause of action, and Adams did not ask us to do so here.

8

(internal quotation marks omitted). "Courts look at all circumstances to ascertain whether an environment is sufficiently hostile or abusive to support a claim." *Leibovitz v. N.Y.C. Trans. Auth.*, 252 F.3d 179, 188 (2d Cir. 2001). Adams claims that he was subjected to a hostile work environment due to gender stereotyping. Under this legal theory, "individual employees who face adverse employment actions as a result of their employer's animus toward their exhibition of behavior considered to be stereotypically inappropriate for their gender may have a claim under Title VII." *Dawson v. Bumble & Bumble*, 398 F.3d 211, 218 (2d Cir. 2005).

"The *sine qua non* of a gender-based discriminatory action claim under Title VII is that the discrimination must be *because of* sex." *Patane*, 508 F.3d at 112. "[A] fact-finder may consider only abusive conduct proven to be based on sex" in the determination of whether the working environment is objectively hostile. *Pucino v. Verizon Wireless Comm'cns, Inc.*, 618 F.3d 112, 117 (2d Cir. 2010) (internal quotation marks omitted). Conduct can be proven to be based on sex either because the terms are facially sex-related, or because there is "some circumstantial or other basis for inferring that incidents sex-neutral on their face were in fact discriminatory." *Id.* (internal quotation marks omitted).

We agree with the district court that Adams has not raised a material question of fact as to whether the work environment was objectively hostile due to sex-based harassment, judging from the evidence that Adams adduced at summary judgment. Accordingly, we uphold the district court's grant of summary judgment on the hostile work environment claims.

**III. Retaliation Claims**

Last, Adams also brought claims alleging retaliation for his complaints regarding harassment he endured while in Festival's employ, both on grounds of sexual harassment and disability

discrimination.[5]   Under Title VII, it is "unlawful for an employer to discriminate against an employee for opposing any practice made unlawful" by the statute. *Tepperwien v. Entergy Nuclear Operations, Inc.*, 663 F.3d 556, 567 (2d Cir. 2011); *see* 42 U.S.C. § 2000e-3(a).  The CFEPA also bars retaliation for complaints regarding discrimination, *see* Conn. Gen. Stat. § 46a-60(a)(4), and such claims are analyzed analogously to their federal counterparts, *see Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 556 (2d Cir. 2010).

A retaliation claim under Title VII requires that the employee prove that he "suffered an adverse employment action," *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 110 (2d Cir. 2010), and the same goes for retaliation under the CFEPA, *see Kaytor*, 609 F.3d at 556.  As discussed above, Adams has not adduced evidence sufficient to show that he suffered an adverse employment action.  This shortcoming is fatal to his retaliation claims under Title VII and the CFEPA.

We have considered all of Adams's remaining arguments and find them to be without merit. For the foregoing reasons, the judgment of the district court is hereby **AFFIRMED**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

---

[5] Adams's complaint makes retaliation claims under the CFEPA and Title VII.  The ADA also contains a retaliation provision, *see* 42 U.S.C. § 12203, but Adams did not bring such a claim in his complaint, and we do not consider it here.